The Chancellor.
On the 1st of March, 1837, “'The Somerville Manufacturing Company” was incorporated. The charter provides for the election of five directors, who should be stockholders, and should hold their office for one year and till others should be elected, and that the directors should choose a president out of their own number. On the 20th of March, 1842, John I. Gaston, Robert Yan Renselaer, Jared N. Stebbins, William Packer and Henry Ibbotson weie elected directors, and no others have been since elected directors. The company obtained the title to about three acres of land, and erected buildings thereon, at a cost, with wheels, castings and gearings, of upwards of ten thousand dollars, as charged in the bill—of upwards of five thousand dollars, as stated in the answer of Loomis and Lyman, two of the defendants ; and bought certain patent rights and a quantity of machinery, at an expense of 150,000 dollars, paid for in stock of the company: which property was in the possession of the company in September, 1842. On or about the first of October, 1842, Van Renselaer and Stebbins, two of the directors, and Loomis and Lyman, and two other stockholders, entered into an agreement in writing, dated October 3d, 1842. purporting to be a memorandum of an agreement between Loomis and Lyman, two of the stockholders, of the one part, and the said Stebbins, Ibbotson, Van Renselaer, and two other stockholders, of the other part, to be binding on those only of the said persons named who should sign it, reciting, that the affairs of the company had been long so embarrassed that its property could not be made productive, and must be sold to meet its liabilities; that the parties to the memorandum are holders of a large amount of the stock of the company, and have expended large sums to make its propérty productive ; that it 4md become necessary that further sums be expended to save what had been laid out from total loss; that it was the intention of the parties to the memorandum to afford an opportunity to other parties who claim to have an equitable interest in the property, if they should wish to protect such interest, to make advances, pro rata, which should be equal to the expenditures made by the parties named in said memorandum, in order that they, on making such advances, might share with the parties named in the memorandum, in *68 :tke benefits or disadvantages to accrue from what had been ■undertaken by the parties named in the memorandum ; and providing that it was therefore agreed by and between the parties to the memorandum as follows:
1st. At any sale of said property which might take place under any execution or decree against it, or at a private sale, assignment or transfer by the managers of the company, the said property, of every description, should be bought by Loomis and Lyman, for the parties who should subscribe the memo-randum, .at the lowest price and on the most advantageous terms possible, provided the price of the whole of the property should not exceed the sum which Loomis and Lyman might be willing .and ready to pay for the same; which property, when purchased, should be held by them for the benefit of the said Loomis and Lyman and the others who should become parties to the memorandum by signing their names thereto, in the following proportions, viz.: Loomis and Lyman should have six twelfths, and the other parties .thereto also six .twelfths-; .that each one should pay, pro rata, for-the purchase of the pro - perty, according to -his respective interest in the same, to be •thereafter declaied.
2d. That immediately after the execution of the memoran.dum, the parties should proceed -to inventory all -the effects of the company, and have the same appraised by competent and disinterested persons, so that the value thereof might be known .to the parties.
3d. That as soon as the property and effects could be obtained, and the title thereto perfected, for the benefit of the parties to the memorandum, a lease for the requisite waterpower should be obtained from the Somerville Water Power-Company, on the usual terms, at the rate of four .dollars per annum for each square inch.
4th. That the title-to the property, .under the sale .contemplated, should be acquired as soon as the same could be done consistent .with the interest of the said parties, and without doing violence to the rights of others.
5th. That simultaneously with the steps therein agreed to be taken, steps should be taken to clean up and put •in order all the machinery and effects of the .company, and *69 prepare the same for use, as soon as tire circumstances should permit.
6th. That as soon as said " purchases should be made, and the value of the same ascertained, articles of agreement more full, and defining the rights of the parties more particularly, should be made out and entered into between the parties ; but •that until then the said memorandum should be binding.
This memorandum was, or purported to be. signed by or in "behalf of the directors and stockholders among whom the arrangement was concluded on, except Ibbotson, a director and stockholder, who it appears refused to sign it.
On the 3d of October, 1842, another writing was made, the substance of which is as follows:—“Agreement made, &c. October 3d, 1842, between J. N. Stebbins, Henry Ibbotson, Robert Yan Renselacr, William Packer and John I. Gaston, managers or directors of the Somerville Manufacturing Company, duly elected under the charter of the said company, of the first part, and Luther Loomis and Samuel P. Lyman of the second part, witnesseth, that the party of the first part, for 3U00 dollars in hand paid by the parties of the second part, the receipt whereof is acknowledged in behalf of the company, have sold, &c. all and singular the letters patent, &c., and all and singular the right., tide and interest of the company, and of the parties of the first part, in the property and effects of the company described in -a deed a copy of which is annexed to said agreement, consisting of machinery, &c., chattels and effects, of whatever name or nature, belonging to the company ; to have and to hold to the said Luther Loomis and Samuel P. Lyman free and clear of all incumbrances whatever. Given under the hands and seals of the parties of the first part, the day and year first above written, and to take effect as soon as a majority of-the above named persons have hereunto subscribed their respective names.” This writing is executed under the individual hands and seals of four of the five persons therein named as parties thereto of the first part. Ibbotson, the other person named as of the first part, did not execute it.
The deed annexed to the said writing, and referred to in it, is a deed from the Poughkeepsie Screw Manufacturing Company to the Somerville Manufacturing Company, of certain patents and machinery, steam engines, materials, lathes, tools and chattels.
*70 On or before the date of the said writing .under the hands and seals of the said 'Yan Renselaer, Stebbins, Packer and Gaston, the property and effects mentioned therein were délivered by ■them, or some or one of them, to Loomis and Lyman,; and.they, in their answer, claim to hold the same under under that .writing. The bill charges, that.no part of the consideration mentioned in said agreement was ever paid by Loomis and .Lyman, or secured in any way, and that it was the-understanding between the-parties to the said writing that they were not to pay any part of it, but that they should hold the property in trust, one half for themselves, and one half for the said parties of the ■first part and some other individuals connected with them.
On- the 4th of October, 18.42, a judgment was confessed, or .entered by -way of confession, against the company, in favor .of Joshua Doughty, for 1176 dollars, and a fi. fa. was issued ■thereon and 'levied on all the property of the company, real and .personal. On the same day, a judgment was confessed against the company to the State Bank at Elizabeth for 672 dollars and 21 cents.
On the 15th of October, 1842, at a meeting of some of the directors in the city of New-York, at- which meeting Gaston, Yan Renselaer, Packer and Ibbotson were present, it was resolved by the votes of Gaston, Yan Ren'selaer and Packer, that all the real estate of the company be conveyed to Loomis and Lyman, and that Gaston, the president, execute a deed thereof; Ibbotson protesting against said resolution : and Gaston, on or ■about the 18th of October, 1842, executed, acknowledged and delivered to Loomis and Lyman a deed for all the real estate of .the company, .for a consideration therein mentioned of 3000 •dollars, the receipt, whereof is, in the deed, acknowledged, subject to two certain liens by judgment and execution against the company, one in favor of Joshua Doughty, and one in favor of.ithe State Bank at Elizabeth.
The bill charges, that though 3000 dollars was mentioned in said deed as the .consideration, yet that- no money was paid or secured or intended to be; but that the conveyance was made to, and the estate thereby granted is now held by, Loomis and Lyman, under some understanding between them and Gaston, Yan Renselaer, Stebbins and Packer, or some of them, that *71 the said property shall be held in trust for them and for their benefit, and without any agreement, understanding or intention that the companji- is ever to be paid any thing for the property, or its creditors any thing on account of their debts.
The bill states particularly the circumstances by reason of which the complainant insists that the judgment confessed by the company to Doughty, and assigned by him to Loomis and Lyman, is fraudulent; and the answers of Loomis and Lyman- and Doughty give their account of that judgment, and claim that it is good. But as the conclusion I have come to on the present motion to dissolve the injunction, is not founded on the validity or invalidity of that judgment, I have not thought fit to state fully the facts in reference to it. The decision to be made on this motion, is founded on the account given in the answer of Loomis and Lyman of the circumstances under which they claim to be the owners of all the property of the company, and on the manner in which the answer gives that account, and on the nature of the arrangement made in reference to the property by and between the parties to the memorandum before alluded to. [The chancellor here stated the charges in the bill as to the nature of the anangemenf,:]
Let us see what answer Loomis and Lyman give to these charges. They admit that previous to the completion of their improvements, the company became embarrassed, <fcc., hut deny that they, these defendants, “being aware, &c. (as in the hill) and being desirous, &c.' (as in the bill) and supposing, &c. (as in the bill) would hold said property in trust, the one half for themselves, and the other half for the other individuals to whom the said oifer was made,” following literally the language of the bill, and departing from the-well settled rule of answering, that the substance of a charge' must be answered or denied, and that a mere literal answer is insufficient; a departure which occurs in several portions of the-answer. They proceed to say, that the equitable interest they held in the property of the company was equal to the value of half the said property as it was then situated. They then statu that the company was embarrassed and had no water power, nor lease for any, nor any power to propel machinery, and was-largely indebted for work and materials ; that the efforts which *72 had been made to carry into effect the objects of the charter had entirely ceased, and the property was going to ruin; that the company had no property or means whatever, except the property aforesaid, to pay .its debts, or complete the buildings, or obtain water, or put the works in operation1; that though other names appear on- the books as stockholders, yet that’, in fact and in equity, the interest in the property of the company belonged to them, Loomis and Lyman, and Yan Renselaer and the said two other stockholders; hot naming Ibbotson, and that all other parties nominally interested’in the company, except Stebbins, who acted as agent of the company, had long since,-to all- intents and purposes, abandoned it. and neglébted and refused fo do any thi'ng, or’ make advances for completing the’ building, or pfobúring water power, or putting th'e works in operation, or paying "for what had’- already been done towards either of these objects. That.they have ho knowledge, information or belief that any of the nominal or pretended stockholders, except the parties last above mentioned, ever paid one cent for or on account of the company since it was chartered, organized and established at Somerville, towards any of the objects aforesaid. 'That they, Loomis and Lyman, Ibbotson, Stebbins, Yan Renselaer and the said two other stockholders, the parties, as they say, interested in and claiming to be the owners, in fact and in equity, of the whole of the stock and property of the company as aforesaid, on the 1st of October, 1842, concluded a general arrangement for the'purpose of paying the debts then owing by the company, for the purpose of procuring a water power, and for the purpose of completing the buildings and machinery and putting the same in operation, and’ rendering its effects valuable to those who were the owners thereof, after a full consultation among themselves, and with those who were the creditors of said company. [How is it that the word “ the,” before “ creditors,” is introduced in the last sentence : it is a word of great force in the connexion in which it stands; and if they mean to say only “ with creditors of the company,” who were those creditors ?]
They further say that, as part of the arrangement, it was agreed by the parties aforesaid, that the 3000 dollars consideration money should be paid ■ and applied directly on account of the company to the creditors thereof, and that they should pay, *73 out of the net earnings of the six twelfths so held by them in trust for said Stebbins, “Van Benselaer and others concerned in said arrangement, after paying the costs of completing and putting the works in operation, a further sum sufficient to pay off and satisfy the remaining debts of the company, and that they, Loomis and Lyman, should put the machinery in operation and make it productive as soon as circumstances would permit; that pursuant to said arrangement and the conveyances and agreements aforesaid, the property was delivered to them, and they took possession thereof on the 1st of October, 1842, and have held it ever since.
They then say, that in pursuance of said arrangements they have expended, in putting up the buildings, procuring water power and putting the machinery in operation, upwards of 12,000 dollars;. that at the time they bought the property and made the agreements and arrangements aforesaid, situated as it was, and without the right to a water power, had it been sold under execution, or at any absolute sale unaccompanied with’ any arrangement for fitting it up and using it in connexion with water power, the property would not have brought enough to pay the debts of the company; and that they knew of no other arrangement which it was in their power to make, whereby so much could he realized, either for the creditors or the stockholders, as by the arrangement and agreement set forth. They deny that the consideration of 3000 dollars was a pretended consideration, and that it was the understanding that they were not to pay it: but aver that the said consideration was bona, ji.de, and that it was expressly agreed that these defendants should pay the same and every part thereof, <! as in said answer before sel forth.”
It is not alleged in any previous or subsequent part of the answer, that they ever paid, or secured or promised or intended to pay, the consideration, or any part of it, in the way consideration money is usually paid or secured; and yet the frame of this clause of the answer looks very much as if they would have it understood as an averment that they were to pay the consideration in the usual way.
They then go on and aver, that the prominent objects the managers had in view were, to realize sufficient to pay the *74 debts of the company, to put the woiks in operation, and to save the property from the sacrifices which, they say, would have been unavoidably made- without- the arrangement which they did make, “ as herein before set forth." ' How these two last prominent objects might be promoted by. the arrangement, we may in some measure comprehend; but how the- other object stated, as - prominent, that of realizing sufficient to pay the debts of. the company, was to be attained by the arrangement, it is difficult.to perceive. It is easy to see, that there is- nothing in all this opposed to the truth of the charge in the bill, that no part of the said consideration money was ever paid or secured to the company, or intended to be, and that no part of it has been or was intended to be paid to-the creditors of-the company.'
There is one part of the answer which seems to approach very nearly to an answer to the charge; but on close examination, it will be found to break the promise to tile hope. It is that, part which says, “ That as part of the arrangement aforesaid, it was agreed by the parties aforesaid, that the said 3000 dollars, the consideration for the sale of the said property, mentioned and set forth in. the said agreement, and acknowledged to have been received from the said defendants by the managers, should be paid and applied directly on account of the said company to the creditors; and it was also agreed that the said defendants should pay, out of the net earnings of the said- six twelfths so held in trust by them as aforesaid for the said Van Renselaer, Stebbins, &c. (naming the others-interested in the arrangement,) after paying the costs of completing and putting the same in operation, a further sum sufficient to pay off and satisfy the remaining debts owing by the company; and it was also agreed that the said defendants should put the said machinery into operation and-- make the same productive as soon as circumstances would* permit-.”
It is evident that these defendants-felt the force of the charge and the importance of giving it an answer. Is the answer such-as should be satisfactory to- the court ? I think not. Was the consideration money, or any part of it, paid ? If it had been, it would no doubt have been so stated in the answer; for they have thought it worth their while to say “ that it was acknowledged (that is, in the deed) to have been received from them *75 by the managers.” Was it secured to be paid ? If so, was any time fixed for its payment? To whom was it to be paid? No answer is given to any of these inquiries. But it is said, it was agreed by the parties to the arrangement (themselves being parties to it) that it should be paid. How, and to whom? The answer says it ivas agreed that it should be paid and applied directly on account of said company to the creditors. By whom was it to be so paid and applied ? By themselves ? The answer does not say so. Was it to be to any particular creditor? or to all the creditors pro ratal Again, how ivas it agreed to be paid ? what evidence is there of an agreement to pay ? No such agreement appears in any of the writings. The memorandum says, that the property, when purchased by them, shall be held by them for their benefit and that of the other parties to the memorandum, half for them and half for”the others, and that each should pay, pro rata, for the purchase of the property, according to his respective interest in the same, to be thereafter declared. To whom ivas each to pay his share ? The answer says it was agreed that the consideration money should be paid and applied directly to the creditors. Are these defendants, Loomis and Lyman, or any or either of the parties to the' memorandum, personally liable to the creditors or any of them ? The title of the property is to be taken out of the company : no part of the purchase money is to be paid to the company; the property is to be removed from the reach of the creditors; and at the same time the parties to the memorandum are not to be personally liable to any creditor. If this is not the arrangement, the company, or those who acted for .it, should have put in their answer to show the court what it was. Indeed it is an objection to the dissolution of the injunction, that the company, or those who acted for it, have not answered; for certainly the gravamen of the bill rests partly on them. If this is the arrangement, it cannot receive the sanction of this court.
There is another rule for answering, which, as it seems to me, has been departed from in this answer. It is this : Where a matter is charged in the bill which must, if true, he within the knowledge of the defendant, the substance of the charge should be answered directly, not evasively, nor by way of negative pregnant. And I -musí be permitted to add, that, where the *76 circumstances charged are suspicious, or have the appearance of collusion and fraud, a defendant must be held to strict rule in answering.
There is one view of the subject, on which, if it be the true view, it might be thought the injunction should be dissolved. I am not-satisfied that the instrument transferring or purporting to transfer the personal property of the company, executed under the hands and seals of four of the directors, and the resolutions mentioned in the answer as afterwards made by the managers, or some of them, approving the transfer, are sufficient to transfer the property; and if the personal property still belongs to the company, it may be asked, why not dissolve the injunction as to the personal property, and let- the execution at law sell it as the property of the company ? The answer is, the party moving for the dissolution do not ask it on that ground. They claim the property as theirs. It may be said, that the sale injóined was a salé about to be made on a judgment at law assigned to Loomis and Lyman., The answer is, if they acquired the title to the property and then bought a judgment at law which was a lien on the property, they relieve the property from the lien of the judgment. It would be a singular proceeding to self their own property to pay a judgment of which they had procured an assignment to themselves. If the property is theirs already, they cannot be injured by an injunction against selling it under the'judgment; and if they claim the property as theirs, and as not subject to the judgment, is it likely that any person besides themselves would be willing to bid for the property and pay its value, at a sale under that' judgment, and take their chance of recovering it or its value from Loomis and Lyman, in opposition to their assertion and claim of title in them prior to tlie judgment? This renders it unnecessary for me to look, a.t this time, into the transaction in reference' to the Doughty judgment.
.. In my view of the'ease, as it stands upon the bill and answer, the injunction should be retained till the hearing of the case 0» the proofs.
Motion denied.